UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARGARET ROCKWOOD,

      Plaintiff,

  v.

MELINDA J. SHOEN, et al.,

      Defendants.

Case No. 2:15-cv-1134
JUDGE GREGORY L. FROST
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motion for judgment on the pleadings (ECF No. 10), Plaintiff's memorandum in opposition (ECF No. 16), and Defendants' reply memorandum (ECF No. 17).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

### I.  Background

Prior to September 11, 2014, Plaintiff, Margaret Rockwood, a resident of Delaware County, Ohio, was an enrolled student at Defendant Central Ohio Technical College ("COTC") in the Diagnostic Medical Sonography ("DMS") Program.  During Plaintiff's second semester in the program, COTC's Program Director for the DMS Program, Defendant Melinda J. Shoen, allegedly advised Plaintiff that Plaintiff could create a special course of study that would allow Plaintiff to "fulfill the cardiac registry examination requirements of the American Registry for Diagnostic Medical Sonography ('ARDMS')" and to "bypass her remaining vascular course work and related clinical assignments."  (ECF No. 1, at Page ID # 3, ¶ 16.)

Thereafter, Plaintiff began her required clinical rotations at various nearby institutions.  Subsequent to a clinical rotation at Licking Memorial Hospital, Plaintiff began a second rotation

at Berger Hospital.  Plaintiff discussed her specialized program with Berger Hospital staff in early September 2014.  Plaintiff alleges that despite her attempted explanation, hospital staff did not understand the specialized program.  Berger Hospital staff then contacted Defendant Elizabeth M. Eyster, COTC's Clinic Coordinator for the DMS Program, for clarification.  Eyster purportedly failed to explain the cardiac-only program in which Plaintiff was supposedly enrolled and instead informed the hospital that Plaintiff would not return to finish her clinical rotation.

On September 10, 2014, Plaintiff was contacted by Shoen, Eyster, and Defendant Sandra Walker, COTC's Dean of Health Sciences and Nursing Programs Administrator, and told not to return to Berger Hospital, but to meet with them instead.  Plaintiff requested that Defendants inform her of the nature of the meeting but was allegedly denied such information.

During the meeting, which took place on September 11, 2014, Plaintiff was handed a letter that indicated that she "had been formally dismissed as a cardiovascular clinical student at Berger Hospital and that Plaintiff was dismissed from the DMS Program in accordance with policy, without the possibility to apply for re-admission." (ECF No. 1, at Page ID # 5, ¶ 29) (internal quotation marks omitted).  At no time prior to their meeting did Defendants offer any explanation for Plaintiff's dismissal from Berger Hospital or provide any details regarding their intent to dismiss Plaintiff.  Plaintiff was informed that the hospital was not required to provide any justification for her dismissal and that she should not contact the hospital "under any circumstance." (*Id.* at Page ID # 6, ¶ 32.)

On September 15, 2014, COTC's President, Defendant Bonnie Coe, agreed to meet with Plaintiff.  Coe informed Plaintiff that Plaintiff had a right to an appeal but that the right had been exhausted during the September 11 and 15, 2014 meetings with Defendants.  Plaintiff was

2

allegedly never provided with any substantive justification for her dismissal from either COTC or Berger Hospital. Rather, the only justification Plaintiff purportedly received was in the form of a statement that Plaintiff was "self-evaluating." (*Id.*)

On March 30, 2015, Plaintiff filed this action against Defendants Shoen, Eyster, Walker, Coe, and COTC. Thereafter, on July 7, 2015, Defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The parties have completed briefing on the motion, which is ripe for disposition.

## II. Discussion

### A. Standard of Review

Defendants have filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court must review motions made under Rule 12(c) in the same manner it would review a motion made under Rule 12(b)(6). *Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757, 761 (6th Cir. 2006). Accordingly, to survive a motion for judgment on the pleadings, a complaint must provide fair notice of each claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The complaint must also state a claim to relief that is plausible on its face. *Id.* A plaintiff's factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Id.* at 556. In ruling on a Rule 12(b)(6) or Rule 12(c) motion, a court must construe the complaint in the light most favorable to the plaintiff and treat all well-pleaded allegations contained therein as true. *Id.* at 555–56. If the

"well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court should dismiss the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**B. Analysis**

*1. Procedural Due Process Claim*

In her first claim, Plaintiff alleges that Defendants violated her procedural due process rights with respect to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff claims that she has a "clearly recognized liberty and property interest in her continued education at COTC, in her reputation and good name, and in the value of a clear academic record as a COTC student." (ECF No. 1, at Page ID # 7, ¶ 40.) Plaintiff further alleges that her "clearly recognized liberty and property interest" guarantees her the right to adequate procedural safeguards. Therefore, Plaintiff's summary dismissal from COTC, which according to Plaintiff failed to include the requisite procedural protections, robbed her of constitutionally guaranteed rights.

Defendants argue that they are entitled to judgment on this claim on the ground of qualified immunity. Defendants also argue that they are entitled to judgment even without qualified immunity because they did not deny Plaintiff any process that she was due. But given the pleadings involved, this Court cannot at this time agree with either proposition.

The doctrine of qualified immunity operates under certain circumstances to shield from civil liability governmental officials who are performing official duties. *Sinick v. Summit*, 76 F. App'x 675, 679 (6th Cir. 2003). It shields government officials from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

4

Courts generally use a two-step analysis to address the potential applicability of qualified immunity. First, the Court determines "whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated"; second, the Court must determine "whether that right was clearly established" at the time of the incident in question. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 443–44 (6th Cir. 2012). It is important to note that the Court need not address these factors in order, but may consider either factor first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The problem here is that the Court cannot reach any conclusion on whether a constitutional right has been violated or whether any such right was clearly established. This is because the key facts are uncertain. These facts matter because the Supreme Court of the United States has "frequently emphasized that [t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86, 98 S. Ct. 948, 953, 55 L. Ed. 2d 124 (1978) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)) (internal quotations omitted). This flexibility is directly applicable to the academic field:

> The need for flexibility is well illustrated by the significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct. This difference calls for far less stringent procedural requirements in the case of an academic dismissal. Since the issue first arose 50 years ago, state and lower federal courts have recognized that there are distinct differences between decisions to suspend or dismiss a student for disciplinary purposes and similar actions taken for academic reasons which may call for hearings in connection with the former but not the latter.

*Id.* Thus, the nature of the dismissal here should control the outcome of the arguments for dismissal. But review of the pleadings fails to indicate whether Plaintiff was dismissed for academic reasons or disciplinary reasons.

Defendants characterize the events at issue as solely an academic dismissal based on unprofessional conduct and explain that, consequently, Plaintiff was afforded all of the process she was due. Plaintiff in turn pleads facts suggesting by inference that the dismissal was disciplinary in nature, which would necessitate her being afforded more procedural due process under clearly established law. This Court cannot say which side is correct because, based on the curiously crafted pleadings, it is impossible to tell *why* Plaintiff was dismissed. There is arguably a substantial difference between mandated dismissal from COTC as a result of dismissal from the hospital and dismissal from the hospital *at the direction of COTC* leading to subsequent dismissal from COTC. Absent clarity as to the events surrounding the dismissal or dismissals involved, it is unclear whether the dismissal from COTC was academic or disciplinary.

Therefore, it is inappropriate at this time to grant Defendants' motion and dismiss the procedural due process claim on the grounds that there was no constitutional violation, with or without application of qualified immunity. It may turn out that qualified immunity applies or that the claim fails on other grounds, but absent sufficient context this Court cannot reach such conclusions at this time. Through discovery and subsequent filings, the parties can present to this Court the nature of the dismissal.

The Court **DENIES** Defendants' motion for judgment on the pleadings in regard to Plaintiff's first claim for relief, the procedural due process claim.

    2. *Substantive Due Process Claim*

In her second claim, Plaintiff alleges that Defendants violated her substantive due process rights when Defendants offered no rational basis to support her dismissal. She asserts that Defendants failed to conduct any substantive investigation into the events that preceded her

6

dismissal and that this failure to investigate and the dismissal were arbitrary, capricious, motivated by ill will, and a direct result of Defendants' custom and policy regarding the dismissal of students. As a direct result of these alleged acts, Plaintiff alleges, she "was wrongfully denied the right to continue and complete her education, she has suffered the loss of future employment opportunities, and she has suffered damage to her reputation, embarrassment and emotional distress." (ECF No. 1, at Page ID # 9, ¶ 57.)

Similar to claim one, Defendants again first assert that they are entitled to qualified immunity. Alternatively, they argue that substantive due process does not apply here. This Court agrees with both propositions.

Plaintiff argues that she has both a clearly recognized property and liberty interest in her continued education at COTC; that those interests are subject to the protections of substantive due process; and that the actions of Defendants deprived her of those interests and denied her that protection. Her principal contention is that her allegedly arbitrary dismissal from COTC without justification violated her "clearly recognized" property and liberty interest in continued education.

The interests protected by substantive due process, however, are much narrower than those protected by procedural due process. The Sixth Circuit has explained that the "[i]nterests protected by substantive due process include … those protected by specific constitutional guarantees, such as the Equal Protection Clause, freedom from government actions that shock the conscience, and certain interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental." *Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir. 2003) (citations and quotations omitted). Cognizant of the limitations that restrict the interests protected by substantive due process, the Sixth Circuit has consistently refused to

7

recognize substantive due process as protecting a student's interest in continuing education. *See Yoder v. Univ. of Louisville*, 526 F. App'x 537, 549 (6th Cir.) *cert. denied*, 134 S. Ct. 790 (2013); *Rogers v. Tenn. Bd. of Regents*, 273 F. App'x 458, 463 (6th Cir. 2008); *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 436-37 (6th Cir. 2006); *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–51 (6th Cir. 2003).

Plaintiff argues that she has a viable substantive due process claim because Defendants' actions were so outrageous and egregious that they "shock the conscience." Her claim purportedly rests on the "the right to be free of 'arbitrary and capricious' action by government actors." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir.2003) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992)). But as the Sixth Circuit has recognized, "the 'arbitrary and capricious' standard set forth in *Pearson* is simply another formulation of, but is no less stringent than, the more traditional 'shocks the conscience' standard." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003). Therefore, Plaintiff's second claim can only survive if Defendants' actions shock the conscience in the constitutional sense.

What this means is that Plaintiff's second claim can survive only if the pleadings present action by Defendants that is "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989). But the pleadings in this case simply do not support the proposition that Defendants' actions shock the conscience. No facts pled suggest that Defendants engaged in actions that "violate[d] the decencies of civilized conduct" or that were "so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency." *Range v. Douglas*, 763 F.3d 573, 589-90 (6th Cir. 2014) (internal quotation marks omitted). No facts pled suggest that Defendants "intended to

8

injure without any justifiable government interest," which matters because "[m]erely negligent tortious conduct is categorically beneath constitutional due process." *Id.* at 590 (internal quotation marks omitted). No facts pled therefore preclude the dismissal of this claim.

The Court **GRANTS** Defendants' motion for judgment on the pleadings in regard to Plaintiff's second claim for relief, the substantive due process claim.

### 3. *Negligence Claim*

In her third claim, Plaintiff alleges that Defendants acted negligently in numerous ways. For example, she asserts that Shoen was negligent in failing to properly formulate the special program in which Plaintiff was supposedly enrolled and that Shoen and Eyster were negligent in failing to communicate Plaintiff's specialized program to Berger Hospital. Defendants argue that this third claim fails because of statutory tort liability immunity pursuant to Ohio Revised Code Chapter 2744 and because Ohio does not recognize a claim of the sort asserted here.

This Court need not reach the statutory immunity issue because Ohio law indeed precludes Plaintiff's third claim. State precedent teaches that "[a] claim that educational services provided were inadequate constitutes a claim for 'educational malpractice.' " *Lawrence v. Lorain Cty. Cmty. Coll.*, 127 Ohio App.3d 546, 549, 713 N.E.2d 478, 480 (1998). That same precedent reveals that, regardless of the label a plaintiff places on such a claim, "Ohio does not recognize educational malpractice claims for public policy reasons." *Id.*

Therefore, Plaintiff's third claim, which targets allegedly substandard educational services, is in actuality an impermissible claim for educational malpractice that this Court cannot entertain. *See id.* ("The trial court properly characterized [the plaintiff's] claims as masking allegations of educational malpractice, which is barred as a cause of action in this state. Thus, we find that the trial court properly dismissed his complaint pursuant to Civ.R. 12(B)(6)."); *see*

9

*also Hopkins v. Columbus Bd. of Educ.*, No. 07AP-700, 2008 WL 852608, at *5 (Ohio Ct. App. 10th Dist. Mar. 31, 2008) ("there is a lack of authority supporting [an educational malpractice] cause of action under Ohio law"); *Lemmon v. Univ. of Cincinnati*, 112 Ohio Misc.2d 23, 29, 750 N.E.2d 668, 672 (2001) (rejecting negligence claim because it was "essentially one of educational malpractice" and "the claim is not recognized in the state of Ohio"). The claim is therefore inappropriate for this federal forum. *See Hutchings v. Vanderbilt Univ.*, 55 F. App'x 308, 310 (6th Cir. 2003) (explaining that the plaintiff's "claims concern the adequacy of the educational services provided by the University" and that "[c]ourts are not inclined to review educational malpractice claims or breach of contract claims based on inadequate educational services"); *Buescher v. Baldwin Wallace Univ.*, No. 1:13 CV 2821, 2014 WL 1910907, at *4 (N.D. Ohio May 12, 2014) (rejecting educational malpractice claim asserted under Ohio law).

In her reply memorandum, Plaintiff attempts to circumvent an adverse decision on this claim by transforming the claim into one targeting willful and reckless conduct. She dubiously offers that "[t]he Complaint may have been inartfully drafted, and the Third Claim should have perhaps included a specific reference to the wanton and reckless nature of Defendants' conduct, but the allegations in the Complaint in their totality are sufficient to place the Defendants on notice that Plaintiff is asserting something more than simple negligence." (ECF No. 16, at Page ID # 93.) But even applying notice pleading standards leniently, no fair reading of the complaint supports Plaintiff's self-serving contention. Plaintiff's complaint expressly and repeatedly targets *only* negligence in the third claim: "Defendant Shoen was negligent in failing to properly research and advise Plaintiff . . ." (ECF No. 1, at Page ID # 10 ¶ 63); "Defendants Shoen and Eyster were negligent in failing to communicate Plaintiff's cardiac only program requirements . . ." (*id.* ¶ 64); "Defendant Eyster was negligent in failing to clarify . . ." (*id.* ¶ 65); "The

10

negligence of Defendants Shoen and Eyster in failing to properly communicate . . ." (*id.* ¶ 66); "In furtherance of Defendants' negligence, Plaintiff was dismissed . . ." (*id.*, at Page ID # 11 ¶ 67); "Plaintiff did not learn of Shoen's mistake . . ." (*id.* ¶ 68); "Defendant COTC is vicariously liable for the negligent acts and omissions of Defendants Shoen and Eyster." (*id.* ¶ 69); "After learning of the mistakes made by Defendants Shoen and Eyster . . ." (*id.* ¶ 70); "As a direct result of the aforementioned negligent acts and omissions . . ." (*id.* ¶ 71); "As a direct result of Defendants' negligence, Plaintiff was wrongfully dismissed . . ." (*id.* ¶ 72); "As a direct result of Defendants' negligence, Plaintiff was wrongfully denied . . ." (*id.* ¶ 73). Plaintiff cannot use a reply memorandum to rewrite that which she actually pled in an effort to salvage an impermissible claim.

This Court **GRANTS** Defendants' motion for judgment on the pleadings in regard to Plaintiff's third claim for relief, the educational malpractice claim disguised as a negligence claim.

### III. Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion. (ECF No. 10.) The Clerk shall enter judgment in favor of Defendants on claims two and three, while claim one remains pending.

**IT IS SO ORDERED.**

                                                            /s/ Gregory L. Frost
                                                   GREGORY L. FROST
                                                   UNITED STATES DISTRICT JUDGE